UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHARMATECH SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHASTA TECHNOLOGIES, LLC, <br><br> Defendant. | Case No. 14-cv-03682-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; DENYING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AS MOOT; AND DISMISSING ACTION** <br><br> [RE: ECF 30] |

Defendant Shasta Technologies, LLC ("Shasta") seeks dismissal of the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The Court has considered the briefing and the oral argument presented at the hearing on April 16, 2015. For the reasons discussed below, the motion to dismiss for lack of subject matter jurisdiction is GRANTED, the motion to dismiss for failure to state a claim is DENIED AS MOOT, and the action is DISMISSED for lack of subject matter jurisdiction.

**I.   BACKGROUND**

Plaintiff PharmaTech Solutions, Inc. ("PharmaTech") filed the complaint in this declaratory relief action on August 14, 2014 and, pursuant to a stipulation of the parties, filed the operative first amended complaint ("FAC") on February 20, 2015. The FAC alleges the following facts: Defendant Shasta Technologies, LLC ("Shasta") was the owner of a product known as the GenStrip, "a diagnostic test strip to be used in conjunction with diagnostic test meters, i.e., devices that measure a person's blood sugar at any particular point in time." FAC ¶ 5, ECF 28. The GenStrip was manufactured for Shasta by a company called Conductive Technologies, Inc.

("CTI"). *Id.* In June 2011, PharmaTech entered into an exclusive distributorship agreement for the GenStrip with Shasta and one of Shasta's investors, Broadtree, Inc. ("Broadtree"). *Id.* ¶ 6.

Shasta marked the GenStrip boxes with the logo of Johnson & Johnson and its subsidiary, Lifescan (collectively, "Lifescan"), along with a photograph of Lifescan's "One Touch" blood monitoring device. FAC ¶ 7. Lifescan, which had not consented to the use of its marks or images on the GenStrip, sued Shasta, PharmaTech, and CTI in this district for violations of the Lanham Act. *Id.* In May 2013, the district court presiding over that action issued a preliminary injunction enjoining the use of GenStrip boxes bearing the Lifescan logo and One Touch photograph. *Id.* ¶ 8. As a result, thousands of GenStrip boxes that PharmaTech had ordered and paid for became unusable; PharmaTech had to order 74,256 replacement boxes. *Id.* ¶¶ 7-9.

In December 2013, the United States Food and Drug Administration ("FDA") conducted a surprise inspection of Shasta's manufacturing facility in Sherwood, Oregon. FAC ¶ 10. It turned out that the facility was the residential home of one of Shasta's owners and members, Calvin A. Knickerbocker III. *Id.* The FDA determined that the residence did not qualify as a manufacturing facility. *Id.* Shasta then told the FDA that the manufacturers of the GenStrip were CTI and PharmaTech. *Id.* ¶ 11.

Upon hearing about these events, PharmaTech's board of directors held a telephonic meeting on March 5, 2014 to formulate a plan designed to keep the FDA from removing the GenStrip from the market and to keep the GenStrip product "alive." FAC ¶ 12. PharmaTech decided to (1) execute a binding term sheet to purchase the GenStrip and its mark from Shasta; (2) hire a consultant to write and implement a suitable quality control plan meeting all FDA standards and regulations with respect to the GenStrip, to be jointly administered by PharmaTech and CTI; and (3) change PharmaTech's principal executive offices to York, Pennsylvania and register PharmaTech as a foreign corporation authorized to conduct business in Pennsylvania. *Id.*

On March 20, 2014, PharmaTech, Shasta, and Broadtree executed a written binding term sheet under which PharmaTech agreed to purchase the GenStrip. FAC ¶ 19. On April 21, 2014, PharmaTech entered into a "Quality Control Agreement" with CTI. *Id.* ¶ 13. Finally, PharmaTech opened offices in York, Pennsylvania and registered as a foreign corporation

authorized to conduct business in Pennsylvania. *Id.* The FDA registered the York, Pennsylvania address as the official facility of PharmaTech. *Id.*

While PharmaTech was taking these steps to save the GenStrip product, the FDA sent Shasta a warning letter dated April 8, 2014, stating that the FDA's December 2013 inspection of Shasta's facility in Sherwood, Oregon had revealed that Shasta was not compliant with the governing Quality System Regulation. FAC ¶ 15 and Exh. A. Among other things, the warning letter demanded that Shasta take immediate remedial action and voluntarily recall the GenStrip. *Id.* Shasta did not respond. *Id.* The FDA subsequently issued a "Worldwide Safety Warning Letter" to users, distributors, physicians, and others, halting the sale, use, and advertisement of the GenStrip. *Id.* ¶ 16 and Exh. B. The FDA also directed users, sellers, and distributers to return any GenStrips to the original point of sale. *Id.* Shasta's name and logo appeared on the 74,256 GenStrip boxes that PharmaTech had ordered to replace boxes bearing LifeScan's name and logo. *Id.* ¶ 17. Because Shasta no longer can market the GenStrip, PharmaTech believes that it will be required to take back and replace approximately 50,040 of those 74,256 GenStrip boxes. *Id.*

Based upon these allegations, PharmaTech asserts a single claim against Shasta entitled "Declaratory and Injunctive Relief Re The Parties [sic] Binding Written Term Sheet." Shasta moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

**II.    Subject Matter Jurisdiction – Rule 12(b)(1)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) raises a challenge to the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005). The FAC alleges subject matter on the basis of diversity of citizenship.[1] FAC ¶ 1. Diversity jurisdiction lies in "all civil

---

[1] Although PharmaTech asserts a claim for declaratory relief, "the Declaratory Judgment Act does not extend the jurisdiction of the federal courts"; a plaintiff asserting a declaratory judgment action must plead an independent basis for subject matter jurisdiction. *Medtronic, Inc. v. Mirowski Family Ventures, Inc.*, 134 S. Ct. 843, 848 (2014) (internal quotation marks and citation omitted).

1  actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest
2  and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Shasta
3  contends that diversity does not exist because both it and PharmaTech are citizens of California.

4  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v.*
5  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the movant asserts that the lack of
6  subject matter jurisdiction is apparent from the face of the complaint. *Id.* In a factual attack, the
7  movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction. *Id.*
8  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the
9  complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*
10  "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the moving
11  party has presented evidence demonstrating the lack of subject matter jurisdiction, the party
12  opposing the motion must present affidavits or other evidence sufficient to establish subject matter
13  jurisdiction. *Id.*

14  Shasta mounts a factual attack here, because although the FAC suggests that it and
15  PharmaTech are citizens of different states, *see* FAC ¶¶ 3-4, Shasta asserts that in fact both
16  companies are citizens of California. The FAC alleges that Shasta "is an Oregon limited liability
17  company, with its principal place of business at 16923 SW Richen Park Circle, Sherwood,
18  Oregon." FAC ¶ 4. While this allegation suggests that Shasta is an Oregon citizen, a limited
19  liability company is "a citizen of every state of which its owners/members are citizens." *Johnson*
20  *v. Columbia Prop. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). One of Shasta's
21  owners/members, Calvin A. Knickerbocker, Jr., is a citizen of California. *See* Calvin A.
22  Knickerbocker, Jr. Decl. ¶¶ 3-4, ECF 30-2. PharmaTech does not dispute Shasta's California
23  citizenship.

24  Shasta's motion thus turns on whether PharmaTech also is a citizen of California. For
25  purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both its state of
26  incorporation and the "state where it has its principal place of business." 28 U.S.C. § 1332(c).
27  The FAC alleges that PharmaTech "is a Nevada Corporation with its *principal executive offices*
28  located at 925 Borom Road, York, Pennsylvania." FAC ¶ 3 (emphasis added). Presumably, this

4

allegation is intended to suggest that PharmaTech's principal place of business is located in Pennsylvania, which would make PharmaTech a citizen of Nevada and Pennsylvania. Shasta contends that PharmaTech's principal place of business is not in York, Pennsylvania but in Westlake Village, California.

A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010). "[I]t should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93.

Shasta points out that the original complaint alleged that PharmaTech's "principal place of business" is in Westlake, California, while the FAC alleges that PharmaTech's "principal executive offices" are in York, Pennsylvania. *Compare* Compl. ¶ 3 *with* FAC ¶ 3. Shasta argues that PharmaTech should be bound by its original allegation. However, PharmaTech's attorney has submitted a declaration stating that he drafted the original complaint and that the allegation therein regarding the company's principal place of business being in Westlake was due to his inadvertence. Troff Decl. ¶ 3, ECF 37. The Court accepts counsel's representation and has not considered the allegation in the original complaint.

Both sides rely upon the declaration and deposition testimony of Keith Berman ("Berman"), who is referred to as PharmaTech's "principal executive officer," "CEO," and "director," and who was deposed as PharmaTech's Rule 30(b)(6) witness. The record does not present any significant factual disputes as to the operations of PharmaTech. The parties differ, however, in the legal conclusions to be drawn from the record evidence. PharmaTech's Board of Directors consists of Berman, who lives in Westlake, California, and two other individuals who live in Northern California and Illinois. Berman Decl. ¶ 14. All Board meetings are conducted by telephone. Thus there is no obvious location from which PharmaTech's "officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92.

PharmaTech has offices in Westlake, California, where Berman lives, and in York,

1   Pennsylvania, where the GenStrip is manufactured.  Berman Dep. 14:5-9; Berman Decl. ¶¶ 9-10.
2   PharmaTech has six or seven employees working at the Westlake office.  Berman Decl. ¶ 15.
3   Those employees "operate PharmaTech's Call Center, i.e., the place where any customer
4   complaints or other customer communications take place."  *Id.*  Berman himself works out of both
5   the Westlake office and the York office.  Berman Dep. 14:10-12.  However, he travels to the York
6   office only twice a month and, possibly, not even that often.  *See* Berman Dep. 14:19 ("twice a
7   month"); Berman Decl. ¶ 13 ("often every other week").  No other PharmaTech employees ever
8   work at the York office.  Berman Dep. 16:7-9.  The York office is located at the same address as
9   the CTI factory, and it doubles both as Berman's office and a storage site for recalled GenStrips.
10  Berman Dep. 17:14-18; Berman Decl. ¶¶ 9-10.  CTI is the independent contractor that actually
11  produces the GenStrip while PharmaTech is the "manufacturer" for FDA compliance purposes.
12  Duval Decl. ¶¶ 4-6.
13      This evidence does not present any obvious answer with respect to the location of
14  PharmaTech's "nerve center."  This Court finds Shasta's motion to present one of the "hard cases"
15  that the Supreme Court has recognized exists "in this era of telecommuting, [when] some
16  corporations may divide their command and coordinating functions among officers who work at
17  several different locations, perhaps communicating over the Internet."  *Hertz*, 559 U.S. at 95-96.
18  Berman states in his declaration that he makes all decisions regarding manufacture of the
19  GenStrip, including FDA compliance, when in York, and "[c]onsequently, PharmaTech's 'nerve
20  center' *with respect to the GenStrip*, is in York, Pennsylvania."  Berman Decl. ¶ 13 (emphasis
21  added).  However, the Supreme Court has made clear that a company's nerve center is a single
22  place.  *Hertz*, 559 U.S. at 93.  Thus the question presented by Shasta's motion is not the location
23  of the PharmaTech's nerve center with respect to the GenStrip, but rather the nerve center of the
24  company as a whole.
25      At the hearing, PharmaTech's counsel pointed to Berman's declaration statement that
26  PharmaTech is not involved in the manufacture or distribution of any product other than the
27  GenStrip, *see* Berman Decl. ¶ 16, and argued that as a result the company's nerve center with
28  respect to the GenStrip necessarily is its nerve center for purposes of diversity.  However, based

upon this record, Berman appears to be the man on the ground with respect to running PharmaTech, and he spends only a few days a month at the York location. The rest of the month, the York location is "nothing more than a mail drop box, a bare office with a computer," *Hertz*, 559 U.S. at 97, and more particularly in this case, a store room for returned product. Moreover, while Berman's deposition testimony and declaration indicate that all decisions regarding *manufacturing* are made in York, they do not speak to where PharmaTech makes decisions regarding marketing, sales, customer relations, strategic planning, financial control and review, or other aspects of PharmaTech's operations. In fact PharmaTech only accounts for what may be as little as one or two days per month of Berman's activities.[2]

PharmaTech argues that its Board affirmatively decided to move its "principal executive offices" to York and that the York address is the one registered with the FDA. *See* Berman Decl. ¶¶ 9-10. The Supreme Court rejected a similar argument in *Hertz*, stating that "we reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" *Hertz*, 559 U.S. at 97.

"The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz*, 559 U.S. at 96. The Court concludes that PharmaTech has failed to meet that burden here. Based upon this record, the York office appears to be the "bare office with a computer" described in *Hertz*; in fact, it is not even clear that the York office *has* a computer. Accordingly, the Court concludes that PharmaTech has failed to present evidence sufficient to establish that the York office, rather than the Westlake office, is PharmaTech's nerve center. Because the Westlake office is PharmaTech's nerve center, PharmaTech is a California citizen. As both PharmaTech and Shasta are citizens of California, diversity jurisdiction does not lie.

Shasta's motion to dismiss based upon lack of subject matter jurisdiction is GRANTED.

---

[2] Berman states in his declaration that he travels to York "often every other week" (suggesting that at times he travels less) and he does not indicate whether the trips last longer than a single day. Berman Decl. ¶ 13.

In light of the Court's disposition on jurisdiction grounds, the motion to dismiss for failure to state a claim is MOOT.

**III. ORDER**

  (1) The motion to dismiss for lack of subject matter jurisdiction is GRANTED;

  (2) The motion to dismiss for failure to state a claim is DENIED AS MOOT; and

  (3) The action is DISMISSED; the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 20, 2015

_____
BETH LABSON FREEMAN
United States District Judge